UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JAMILA BELL** c/o of
**JOSEPH  MASON**, a minor,

Plaintiff,

No. 13-CV-14563

vs.

Hon. Gerald E. Rosen
Magistrate Judge Mona K. Majzoub

**TJX COMPANIES, INC.**, a national
corporation,

Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

Plaintiff Jamila Bell, a Michigan resident, originally filed this premises liability action on October 4, 2013, in Wayne County Circuit Court against Defendant TJX Companies, Inc., a company incorporated in and having its principal place of business in Massachusetts.  The case arises out of an incident at one of Defendant's retail stores located in Allen Park, Michigan, at which Plaintiff's four-year old son, Joseph Mason, slipped and fell on a piece of clothing that had been left underneath a merchandise rack, allegedly causing injuries to Joseph's neck, back, chin, and tooth.  Plaintiff claims the slip was caused by

Defendant's negligence in failing to adequately maintain the premises of its store. Pursuant to 28 U.S.C. § 1441, Defendant removed to federal court based on diversity of citizenship.

Currently before the Court is Defendant's Motion for Summary Judgment. (Dkt. # 17). Having reviewed and considered the parties' briefs and supporting documents and the entire record of this matter, the Court has determined that the pertinent allegations and legal arguments are sufficiently addressed in these materials and that oral argument would not assist in the resolution of this motion. Accordingly, the Court will decide the parties' motions "on the briefs." See L.R. 7.1(f)(2). This Opinion and Order sets forth the Court's ruling.

## II. PERTINENT FACTS

On June 11, 2012, Plaintiff Jamila Bell was shopping at Defendant's T.J. Maxx store in Allen Park, Michigan, with three of her children: Bryendon Fuquay, Andrew Fuquay, and Joseph Mason. Dep. of Jamila Bell, Dkt. # 17-3, at 31-32. Plaintiff and her family were frequent shoppers in the store. *Id.* at 32. At the time of the events at issue here, Bell and her children were shopping in the dress section of the store. *Id.* at 33. Bell's children were walking "in [her] vicinity," approximately one foot away from her while she stood near a corner between two aisles, when her youngest son, 4-yaer-old Joseph Mason, "slipped over some

2

unretrieved dresses that [were] under the 4-way metal rounder." *Id.* at 34-35. Joseph "hit his chin" on the base of the clothing rack as he fell.[1] *Id.* at 34-35, 37. Bell testified at her deposition that she did not notice the dresses prior to Joseph's fall, but she did not believe that her children placed the dresses on the floor or were otherwise misbehaving. *Id.* at 34-36. Bell testified that she did not know how long the dresses had been on the floor prior to Joseph's fall.[2] *Id.* at 37, 39.

Plaintiff's daughter, Amira Bell, was also present at the time of Joseph's fall. Amira, an employee at Defendant's Allen Park store, worked that day at the cash register and walked around the dress section with her mother and brothers while taking a break from work. In her deposition, Amira provided inconsistent testimony as to how the family walked through the dress section. At one point, Amira testified that she walked next to her mother while at least two of her

---

[1] Plaintiff's daughter, Amira Bell, testified that she was not sure whether Joseph hit his head on the base of the clothing rack or the floor. Dep. of Amira Bell, Dkt. # 17-4, at 37.

[2] Joseph suffered several injuries that Plaintiff claims were caused by his fall. After falling, Joseph was moved to the first aid area of the store where employees applied gauze and antiseptic. From there, Bell took Joseph to the hospital within 30 minutes. Dep. of Jamila Bell, at 44-45. He had superficial abrasions and an ajarred tooth. *Id.* at 45. While one of the cuts to his chin was "deep," he did not receive any stitches. *Id.* at 29. The tooth injury was more severe; Joseph suffered nerve damage to the injured tooth and Plaintiff alleges that his teeth are "discolored," requiring regular dentist visits. *Id.* at 29-31. Plaintiff claims Joseph suffers other long-term effects, including muscle spasms that cause him to awaken during the night, and some discomfort when playing sports. *Id.* at 46-47. Joseph has been attending physical therapy for the past year and a half. *Id.* at 46. Joseph is still capable of all physical activity that a normal 4-year-old is. *See* Dep. of Amira Bell, Dkt. # 17-4, at 12.

brothers, including Joseph, followed closely behind.  Dep. of Amira Bell, Dkt. #

17-4, at 22.  However, Amira later testified that either she or her mother held

Joseph's hand as they walked through the dress section.  *Id.* at 24-25.  Regardless

of how the family walked through the dress section, neither Amira nor her mother

saw anything unsafe or unusual before Joseph fell.  *Id.* at 25; Dep. of Jamila Bell,

at 18, 26, 35.

Amira corroborated her mother's testimony regarding Joseph's fall, stating

that he slipped on some dresses that where on the floor of the store.  Dep. of Amira

Bell, at 18.[3]  Amira's testimony was inconsistent, however, regarding the extent to

which she saw the fall: at one point she stated that she "didn't see him actually

slip," *id.* at 27, but in other testimony, she implied she actually did see the fall, *id.*

at 27-33.  Like her mother, Amira noted that she did not notice the dresses prior to

Joseph's fall, that she did not know how long the dresses had been present on the

floor, and that she did not know how many dresses were there.  *Id.* at 19.  Amira

did state that the dress department was messy that day, and that in general, the

store was "discombobulated" with "things . . . on the floor" and "things . . . all over

the run."  *Id.* at 26.  However, Amira never complained about the cleanliness of the

store during her employment there, and on the day Joseph fell, Amira did not

---

[3] Amira's deposition testimony was not specific as to how far into the aisleway the
dresses were when Joseph fell on them: she testified that they were "towards the
aisleway" but "[not] blatantly in the middle of the aisleway."  Dep. of Amira Bell,
Dkt. # 17-4, at 18-20.

notice that the dress section was "in that bad of condition" until after Joseph fell. *Id.* at 34.

Following the fall, Jamila Bell filed this suit on October 4, 2013, in Wayne County Circuit Court, court on behalf of Joseph.  Dkt. # 1.  The complaint alleges that "Defendant TJX knew or by exercise of reasonable care would have discovered the bunched up clothes stuffed under the clothing rack and protruding into the aisle ways, and [should have] realize[d] that it involved an unreasonable risk of harm to . . . invitees." *Id.* at 3.  Accordingly, Plaintiff claims that Defendant violated its duty to Plaintiff "[b]y failing to maintain the premises in a reasonably safe condition." *Id.*  Defendant removed the case to this court, and subsequently moved for summary judgment.  Dkt. ## 1, 17.

### III. DISCUSSION

#### A.    Rule 56 Standard

Through their present motions, both parties seek summary judgment in their favor pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Under that Rule, Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after

adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In addition, where a moving party seeks an award of summary judgment in its favor on a claim or issue as to which it bears the burden of proof at trial, this party's "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir. 1986) (emphasis and citation omitted).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). But, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

**B.      Plaintiff Has Failed to Show a Genuine Dispute as to Defendant's Notice of the Alleged Hazard**

6

Plaintiff has asserted a premises liability claim based on an injury arising out of an allegedly unsafe condition: several dresses bunched up on the floor of Defendant's store.  Because this is a diversity case, the Court must apply the substantive law of the state's highest court -- here, the Supreme Court of Michigan. *Allstate Ins. Co. v. Thrifty Rent–A–Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001); *see generally Erie R. Co. v. Tompkins*, 304 U.S. 64, 69, (1938).  "Premises liability actions arise out of a store owner's general duty to provide safe premises for business invitees." *Rippy v. Home Depot U.S.A., Inc.*, No. 09-CV-12043, 2010 WL 891154, at *2 (E.D. Mich. Mar. 10, 2010).  Michigan law is well-established regarding the duties that a storekeeper owes to customers with respect to dangerous conditions in the store:

> It is the duty of a storekeeper to provide reasonably safe aisles for customers and he is liable for injury resulting from an unsafe condition either caused by the active negligence of himself and his employees or, if otherwise caused, where known to the storekeeper or is of such a character or has existed a sufficient length of time that he should have had knowledge of it.

*Clark v. Kmart Corp.*, 634 N.W.2d 347, 348 (Mich. 2001) (emphasis omitted) (quoting *Serinto v. Borman Food Stores*, 158 N.W.2d 485, 486 (Mich. 1968)).  In other words, under Michigan law, there are three ways a storekeeper may be liable for injuries resulting from an unsafe condition located on the premises: (1) the storekeeper *caused* the unsafe condition (so-called "active negligence"), (2) the storekeeper *knew* about the unsafe condition (so-called "actual notice"), or (3) the

storekeeper *should have known* about the unsafe condition (so-called "constructive notice").[4]

The first two types of negligence obviously do not apply in this case. "Active negligence exists where a defendant or his agents have created a dangerous condition." *Williams v. Borman's Foods, Inc.*, 477 N.W.2d 425, 426 (Mich. Ct. App. 1991) (*citing Hulett v. Great Atlantic & Pacific Tea Co.*, 299 N.W. 807 (Mich. 1941)). Here, Plaintiff has not presented any evidence that Defendant created the allegedly dangerous condition of "bunched up" dresses on the floor, nor does she appear to even maintain that Defendant created the condition.

Plaintiff does, however, argue that "Amira Bell had actual notice of the dangerous condition[] and failed to report" it. Pl.'s Resp. to Def.'s Mot. for Summ. J., Dkt. # 22, at 13. Plaintiff supports this argument with Amira's testimony that the store was "discombobulated" and "always messy." Dep. of

---

[4] The parties do not appear to dispute whether an unreasonably unsafe condition was present on Defendant's premises, regardless of whether Defendant knew or should have known about it. *See Prebenda v. Tartaglia*, 627 N.W.2d 610, 612 (Mich. Ct. App. 2001) (finding that, where plaintiff was injured when trying to pull open a door because another individual was pushing the door open from the other side, "we conclude that no reasonable juror could have found that a dangerous condition on the land was involved here. To put it plainly, the decedent did not encounter a dangerous condition at the time of the accident; she encountered a commonplace and ordinary door."). For the purposes of the present analysis, the Court assumes that the presence of the dresses on the floor created an unsafe condition that could give rise to Defendant's liability.

Amira Bell, at 26-27.   Plaintiff, however, misunderstands the concept of actual notice in a premises liability action.   The alleged dangerous condition from which Defendant's liability potentially stems in this case is not the store's alleged general messiness, but, more specifically, the dresses on which Joseph Mason slipped. And Plaintiff provides no evidence that Amira Bell or any other TJX employee had actual notice of the dresses being on the floor.   Indeed, Amira stated that she did not see or know about the dresses prior to Joseph's fall, *id.* at 34, and Plaintiff provides no testimony from any other TJX employee.

Thus, Defendant's potential liability turns on the question of whether it had "constructive notice" of the bunched up dresses on the floor. *See Clark*, 634 N.W.2d at 348-49.   That is, in the absence of direct evidence showing when or how a dangerous condition occurred, a plaintiff may meet her burden of demonstrating notice by producing evidence that allows the inference that the defendant *should have* noticed the dangerous condition.   *Id.* In slip-and-fall cases such as this one, whether a defendant had constructive knowledge of the hazard typically turns on how long the hazard was present: a plaintiff must provide evidence sufficient to "permit a jury to find that the dangerous condition was present long enough that the defendant should have known of it." *Id.* at 349; *see also Goldsmith v. Cody*, 88 N.W.2d 268, 272 (Mich. 1958) ("Where the defect was of such a nature as to

9

warrant the conclusion that it had existed an appreciable time, we have held the question of constructive notice to be one for the jury.").

Such evidence can come in several forms. For example, in *Clark v. Kmart Corp.*, a customer brought suit after slipping on loose grapes that were scattered on the floor of a grocery store checkout aisle. 634 N.W.2d, at 348. One of the defendant's employees later testified that the checkout aisle where the plaintiff slipped would typically have closed about an hour before the plaintiff arrived, leading to the potential inference that the grapes must have been in the aisle for at least an hour prior to the plaintiff's fall. *Id.* at 420. "From this, the jury could infer that an employee of defendant should have noticed the grapes at some point before or during the closing of the lane and either cleaned them up, or asked another employee to do so." *Id.* at 420. Likewise, a number of physical indicators on or around the hazard itself can provide information as to how long it existed, such as the presence of accumulated dryness around a slippery spill, *e.g.*, *Dascola v. YMCA of Lansing*, No. 293475, 2011 WL 1901953, at *5 (Mich. Ct. App. May 19, 2011); the presence of a safety cone near a hazard, *e.g.*, *Jackson v. Target Corp.*, No. 12-12190, 2013 WL 3771354, at *5 (E.D. Mich. July 18, 2013); or the presence of tracks through a hazard, *e.g.*, *McAdory v. Target Corp.*, No. 08-10157, 2009 WL 1076296, at *6 (E.D. Mich. Apr. 21, 2009). *But see Hernandez v. K Mart Corp.*, No. 235818, 2004 WL 1620853, at *2 (Mich. Ct. App. July 20, 2004)

(finding that the presence of footprints in a spill does not necessarily indicate that it was present for a "significant length of time").

Plaintiff in this case offers two theories in an attempt to demonstrate that the dresses were present on the floor of the store long enough such that Defendant should have known about them. First, Plaintiff argues that there were "more than two different items on the floor" that "were protruding from underneath the rack," facts that Plaintiff believes "[are] sufficient evidence the hazardous conditions existed for a sufficient period of time." Pl.'s Resp. to Def.'s Mot. for Summ. J., at 14. The Court does not agree with Plaintiff's conclusion. A similar argument was made in *Rippy v. Home Depot U.S.A.*, a case in which the plaintiff and his wife were shopping in a Home Depot store when a box of floor tiles fell on his foot, injuring him. 2010 WL 891154, at *1. The plaintiff later testified that multiple boxes of tiles in the area were "scrambled around," "twisted," and not "stacked neatly on top of each other." *Id.* (internal quotation marks omitted). The plaintiff asserted that the disorganized nature of the multiple boxes indicated that they had been so arranged for sufficient time to put the store on notice. The Court disagreed:

> [T]he fact that the boxes of tiles were "scrambled" does not alone
> support an inference that the condition had existed for a considerable
> period of time, evidence from which the inference could be drawn that
> Defendant should have known of its presence. Viewing the record in
> a light most favorable to Plaintiff, it is just as plausible that a customer

11

> misplaced boxes of tile immediately or shortly before the [plaintiff] entered the flooring aisle.

*Id.* at *3 (citation omitted).  Likewise, the fact that multiple dresses were on the floor in a disorganized fashion in this case says nothing about how long they were there; another customer may have moved them there minutes before Joseph's fall, or they may have been left there for hours.

Plaintiff's second argument is better supported.  She argues that if Defendant's store was generally "discombobulated" and "messy" aside from the messiness of the single aisle at issue here, it is more likely that the dresses that Joseph slipped on were present for a significant amount of time.  Plaintiff relies on *Kahl v. Borman's Inc.*, No. 267267, 2006 WL 890061 (Mich. Ct. App. Apr. 6, 2006) an unpublished per curiam opinion of the Michigan Court of Appeals in which a plaintiff slipped on a drizzle of shampoo in a grocery store.  *Id.* at *1.  At the time of the slip, a store cashier discovered a second spill of an identical substance in a separate aisle.  *Id.*  Quoting the case, Plaintiff argues that it stands for the proposition that "conditions in one [a]isle[] 'may establish awareness of a *potential* for a hazard in another location.'"  Pl.'s Resp. to Def.'s Mot. for Summ. J., at 13 (quoting *Kahl*, 2006 WL 890061, at * 1).  Plaintiff fails, however, to quote the very next paragraph, which substantially undermines Plaintiff's position:

> Here, there was no evidence indicating how long the spill existed in the area that plaintiff fell.  Plaintiff asserts that the [separate] spill in aisle six must have been present for an interval long enough for the

cashier to inspect aisle six, call the bagger, and for him to begin the clean-up.  However, there is no basis for inferring that the spill where plaintiff fell existed for the same period of time.  At best, the cashier's statement provides a basis for inferring that the spill was caused by a shopper with a leaking bottle.  But one could only speculate about the path and speed of that unknown shopper and when and where the leak began.  There is nothing in the record to make it more or less probable that the shopper with the leaking bottle passed the area where plaintiff fell before or after visiting aisle six. The shopper may have passed the area that plaintiff fell only moments before. Plaintiff's attempt to show constructive notice is too speculative to create a genuine issue of material fact.

*Kahl*, 2006 WL 890061, at *2.

*Kahl*, therefore stands for the opposite position of what Plaintiff argues: a hazard present in one part of a defendant's premises is *not* indicative of the amount of time that a second, separate hazard was present on those premises.  Plaintiff's argument attempts to go even one step farther in that she does not point to a single separate hazard from the one that led to Joseph's injury, but rather a general state of messiness in Defendant's store.  Such a broad claim, well-removed from specific indicators of the duration that the hazard was present, is too attenuated to establish Defendant's constructive notice here.  *See Mukrdecian v. DRS C3 & Aviation Co.*, No. 312443, 2013 WL 6692795, at *3 (Mich. Ct. App. Dec. 19, 2013) (finding that circumstantial evidence that a hazard may have resulted from a general condition "is insufficient to create a reasonable inference that a defendant had constructive notice" of the hazard); *see also Halperin v. Waldbaum's Supermarket*, 236 A.D.2d 514 (N.Y. App. Div. 1997) ("[T]he operative rule is that

2:13-cv-14563-GER-MKM   Doc # 25   Filed 01/13/15   Pg 14 of 15   Pg ID 236

"a 'general awareness' that a dangerous condition may have been present is legally insufficient to constitute notice of the particular condition that caused the plaintiff's fall.").

Accordingly, Plaintiff has not presented evidence "tak[ing] the case out of the realm of conjecture and into the field of legitimate inferences from established facts." *Whitmore v. Sears, Roebuck & Co.*, 279 N.W.2d 318, 321 (Mich. Ct. App. 1979) (internal quotation marks omitted). Plaintiff's case falls into the category of cases which lack sufficient evidence as to when the dangerous condition arose. *See, e.g.*, *Schultz v. Metromedia Steakhouses Co., LP*, No. 06-CV-15437, 2007 WL 2225865, at \*6 (E.D. Mich. July 31, 2007); *Goldsmith v. Cody*, 88 N.W.2d 268, 271-72 (Mich. 1958); *Filipowicz v. S.S. Kresge Co.*, 274 N.W. 721, 723 (Mich. 1937); *Whitmore*, 279 N.W.2d at 321; *Galloway v. Sears, Roebuck & Co.*, 183 N.W.2d 354, 355 (Mich. Ct. App. 1970); *Suci v. Mirsky*, 232 N.W.2d 415, 418 (Mich. Ct. App. 1975); *Winfrey v. S.S. Kresge Co.*, 149 N.W.2d 470, 473 (Mich. Ct. App. 1967); *Kahl*, 2006 WL 890061, at \*2. Because Plaintiff has not shown a genuine dispute of material fact regarding whether Defendant had actual or constructive notice of the dangerous condition, her claim must fail.[5]

_____

[5] Because the Court finds that Plaintiff has not presented sufficient evidence to meet its Rule 56 burden as to whether Defendant had notice of the alleged hazard, it need not reach the question of whether the hazard was "open and obvious" sufficient to free Defendant from liability even if it had such notice. The Court notes that the answer to that question is not immediately clear. Under the open and

14

## IV. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (Dkt. # 17) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Complaint is DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**


Dated:  January 13, 2015                    s/Gerald E.  Rosen
                                            Chief, Judge, United States District Court

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 13, 2015, by electronic and/or ordinary mail.

                                            s/Julie Owens
                                            Case Manager, (313) 234-5135

---

obvious doctrine, a storekeeper is not liable, despite the presence of an unreasonable risk of harm, when "an average user with ordinary intelligence [would] have been able to discover the danger and the risk presented upon casual inspection." *Novotney v. Burger King Corp.*, 499 N.W.2d 379, 381 (Mich. Ct. App. 1993).  Children, however, "are not held to the same standard of care as adults." *Bragan ex rel. Bragan v. Symanzik*, 687 N.W.2d 881, 884 (2004).  When the plaintiff is a minor, the analysis turns on "whether a dangerous condition would be open and obvious to a reasonably careful minor; that is, whether the minor would discover the danger and appreciate the risk of harm." *Id.* at 889.  Here, the issue is complicated by Joseph's very young age (four years old).  Indeed, as this Court has noted, under Michigan law, "[w]hether the open and obvious doctrine applies to children under seven is . . . an open question." *Robinson v. Lowe's Home Centers, Inc.*, No. 09-10675, 2010 WL 1463045, at *4 (E.D. Mich. April 13, 2010).  This Court does not reach that question.